**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

STANLEY L. NIBLACK,                      :
                                         :          Civil Action No. 12-6910 (MAS)
                    Plaintiff,           :
                                         :
            v.                           :          **OPINION**
                                         :
DETECTIVE ANTHONY MURRAY,                :
et al.,                                  :
                                         :
                    Defendants.          :

**APPEARANCES:**

> STANLEY L. NIBLACK, Plaintiff pro se
> #923038A
> Bayside State Prison (Unit "F")
> 4293 Route 47, P.O. Box F1
> Leesburg, New Jersey 08327

**SHIPP**, District Judge

Plaintiff, Stanley L. Niblack, a state inmate confined at the Southern State Correctional Facility in Delmont, New Jersey, at the time he filed this Complaint, seeks to bring this action *in forma pauperis*. Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief

from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the Complaint should proceed in part at this time.

## I. BACKGROUND

Plaintiff, Stanley L. Niblack ("Plaintiff"), brings this civil action, pursuant to 42 U.S.C. § 1983, against the following defendants: the Borough of Bradley Beach; Bradley Beach Mayor Julie Schreck; Detective Anthony Murray, Special Officer Justin Poblete, Chief Leonard Guida, Detective Terry Browning, Special Officer Kyle Early, Lieutenant Stephen Fahnholtz, Sergeant Michael Ricciardi, and Patrolman Kevin Gale, all Bradley Beach Police Department officials; and the Bradley Beach First Aid and its employees, Maureen McCaltery and Jane Doe. (Complaint, Caption, and Parties.) The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

Plaintiff alleges that, on or about March 8, 2012, as he went through the Bradley Beach Municipal Court Complex checkpoint, he reached to retrieve his items out of a bin so that he could return to his vehicle and obtain his court papers. As he exited the building, however, Defendants Poblete and Murray grabbed Plaintiff from behind and slammed Plaintiff head first onto the concrete. While Plaintiff was on the ground, Defendants Poblete, Browning, and Early proceeded to punch and kick Plaintiff. Defendants, Sgt. Ricciardi and Lt. Fahnholtz, joined the other officers and repeatedly struck Plaintiff in the chest, abdomen, arms and legs. While Plaintiff was on the ground, his face was repeatedly smashed into the concrete. This alleged assault continued even after Plaintiff was handcuffed. (Complaint, ¶¶ 1, 2.)

Plaintiff alleges that none of the officers present did anything to stop the assault. (Compl., ¶ 2.)

Plaintiff further alleges that while he was being escorted to the police station by Defendants Murray, Gale, Sgt. Ricciardi, and Lt. Fahnholtz, Plaintiff complained about the handcuffs that were cutting into his wrists. According to Plaintiff, he was told to "shut up" and Defendants yanked and pulled up on the handcuffs, causing more pain to Plaintiff. Plaintiff alleges that his face was bleeding and that he had excruciating pain in his face, body and abdomen. (Compl., ¶ 3.)

When Plaintiff arrived at the police station, he requested medical attention for his injuries, and to be taken to the hospital. Plaintiff alleges that Defendants, Murray and Sgt. Ricciardi, and first aid responders, McCaltry and Jane Doe, told Plaintiff to sign a medical attention form, which Plaintiff believed to be a refusal of medical attention form. Plaintiff refused to sign the form and was told that he was not going to be taken to the hospital. The first aid nurses then gave Plaintiff an ice pack for his injuries, and left Plaintiff with a swollen left eye, swollen and cut wrist, and "excruciating pain." Plaintiff was then sent to a jail cell without medical treatment. (Compl., ¶ 4.)

Plaintiff further alleges that Defendants suspected that Plaintiff had consumed a controlled dangerous substance, but did nothing to protect Plaintiff in this regard, such as placing Plaintiff in

> "a dry cell, [having] plaintiff's stomach pumped or the acquisition of a warrant to conduct a body cavity search. Which would not have only obscured defendants false allegations of plaintiff having swallowed a controlled dangerous substance. But, may have sustained a recourse in obtaining adequate medical care for plaintiff (detainee) who's life allegedly may have been in jeopardy. Which could have entailed from [a] drug overdose if plaintiff had actually consumed a controlled dangerous substance and died in police custody as alleged.

(Compl., ¶ 10.)

Next Plaintiff alleges that Defendants, Borough of Bradley Beach, Mayor Schreck and Police Chief Guida failed "to train, supervise or discipline the police officers under their command." (Compl., ¶ 5.) Plaintiff contends that

> "[w]here the extremely faulty training program of the Borough of Bradley Beach Police Officers is a direct and/or indirect result of their use of excessive force, police brutality and deliberate indifference to detainees medical needs. That further leads to Constitutional Infringements on its inhabitants or citizens to be free from such blatant abuses. The action(s) stated herein to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by this body/s [sic] officers within the Borough of Bradley Beach."

(Compl., ¶ 6.)

Plaintiff further alleges that Defendants, Borough of Bradley Beach, Mayor Schreck and Chief Guida, have "made a deliberate and conscious choice in failing to train its police officers on constitutional mandates in the context of use of force or medical treatment for detainees in their custody and care." (Compl., ¶ 7.) Plaintiff contends that by failing to discipline police officers for other instances of police brutality, these Defendants "condone, tolerate and acquiesce in these constitutional deprivations." (*Id.*) Plaintiff generally alleges that

> The Borough of Bradley Beach has a history of widespread abuse imputed to supervisory and personnel prior misbehavior. These Borough Policy Makers [have] implemented practices, procedures, policies, rules, regulations, standards, ordinances, customs and/or usages. That violate its inhabitants constitutional rights which are so permanent and well settled in the Borough of Bradley Beach as to constitute a "custom or usage" with force of law. Where their deliberate indifference to constitutional mandates and to properly or adequately train their police officers, is the moving force behind the constitutional violations or torts.

(Compl., ¶ 8.)

Plaintiff seeks $11 million from the individual defendants, $7 million from the Borough of Bradley Beach, and $2 million from the Bradley Beach First Aid, for a total of $20 million in compensatory, punitive and special damages. (Compl., "Demand".) He also asks that the

4

Borough of Bradley Beach be required to implement an adequate training program and guidelines for disciplinary actions for its police officers who violate constitutional rights of citizens. Plaintiff further demands that a consent decree be issued for "a three year moratorium on use of force and medical treatment accessed by the Borough of Bradley Beach Police Department and Borough of Bradley Beach First Aid," and a "collection of comprehensive data on the race and ethnicity" of persons injured by use of excessive force and denial of medical treatment by Bradley Beach police officers. (Compl., "Declaratory Relief".)

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding *in forma pauperis* or seeks redress against a governmental employee or entity. Specifically, the PLRA directs the district court to screen the complaint for cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. This action is subject to *sua sponte* screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) and § 1915A.

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Citing its opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555), the Supreme Court held that, to prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.

5

2009)(citing *Iqbal*, 556 U.S. at 676).  *See also Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)

("The touchstone of the pleading standard is plausibility. ...  "[A]llegations that are no more than

conclusions are not entitled to the assumption of truth; ... [a court should] "look for well-pled

factual allegations, assume their veracity, and then 'determine whether they plausibly give rise to

an entitlement to relief.'") (citations omitted).  In short, "[a] complaint must do more than allege

the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."

*Fowler*, 578 F.3d at 211 (citing *Iqbal*, 556 U.S. at 678-79).  Thus, while *pro se* pleadings are

liberally construed, *Higgs v. Atty. Gen.*, 655 F.3d 333, 339 (3d Cir. 20011), "pro se litigants still

must allege sufficient facts in their complaints to support a claim."  *Mala v. Crown Bay Marina,*

*Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).  Nonetheless, courts must be cognizant

that the *Iqbal* standard "is not akin to a probability requirement."  *Covington v. International*

*Association of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (quoting *Iqbal*,

556 U.S. at 679).

### III.  SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.  Section 1983 provides in

relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory ... subjects, or causes to be subjected, any citizen
> of the United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right

secured by the Constitution or laws of the United States and, second, that the alleged deprivation

was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## IV.  DISCUSSION

A.  Excessive Force Claim

The Court construes the Complaint in this case as alleging an excessive force claim under the Fourth Amendment.  Claims of excessive force during arrests, investigatory stops and other seizures are governed by that constitutional clause.  *See Graham v. Conner*, 490 U.S. 386 (1989); *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004).  When construing an excessive force claim, the Court must consider whether the Defendants' use of force was objectively reasonable under the circumstances, regardless of their underlying motive or intentions.  *Graham*, 490 U.S. at 397; *see also Ashton v. City of Uniontown*, 459 F. App'x 185, 189 (3d Cir. 2012).  In *Graham*, the Supreme Court expounded on the reasonableness inquiry, stating that it "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.* at 396; *see also Walke v. Cullen*, 491 F. App'x 273, 277 (3d Cir. July 2, 2012).  In addition, the Third Circuit has noted other relevant factors, including "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time."  *Couden v. Duffy*, 446 F.3d 483, 496–97 (3d Cir. 2006) (citation omitted).

Furthermore, appropriate attention should be given "to the circumstances of the police action, which are often 'tense, uncertain, and rapidly evolving.'"  *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (quoting *Graham*, 490 U.S. at 396) ("Not every

push or shove, even if it may later seem unnecessary," violates the constitution.). "Reasonableness is to be evaluated from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004) (internal quotation marks and citation omitted); *see also Brown v. Cwynar*, 484 F. App'x 676, 679-80 (3d Cir. June 7, 2012). It is also important to consider whether "the physical force applied was of such an extent as to lead to injury." *Walke*, 491 F. App'x at 277 (citations omitted).

In this case, Plaintiff alleges that Defendants Poblete, Murray, Browning, Early, Ricciardi, Fahnholtz, and Gale used excessive force in their arrest of Plaintiff by slamming Plaintiff's head onto the concrete, and repeatedly punching and kicking Plaintiff on the ground while handcuffed, purportedly without provocation. Plaintiff also alleges that the handcuffs were tightened to the point that they cut and bruised his wrists. He further complains that he allegedly suffered a swollen and cut eye, facial abrasions and cuts, and a swollen, bruised and cut wrist. These allegations, if true, are sufficient at this time to raise a "plausible claim for relief." *Iqbal*, 556 U.S. at 679. Therefore, this Court will allow Plaintiff's Fourth Amendment claim of excessive force to proceed at this time as against Defendants Poblete, Murray, Browning, Early, Ricciardi, Fahnholtz and Gale.

In addition, Plaintiff alleges that several unnamed Defendant police officers who were present during his arrest failed to intervene when the above named officers allegedly used excessive force against Plaintiff in violation of his constitutional rights. "Courts have held that a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior." *Smith v. Mensinger*, 293

8

F.3d 641, 650 (3d Cir. 2002). Accordingly, this failure to intervene claim also may proceed at this time against the unnamed Bradley Beach police officers present at the scene of the incident.

B. Denial of Medical Care Claim

Plaintiff next alleges that Defendants Murray and Ricciardi, as well as Bradley Beach First Aid nurses McCaltry and Jane Doe, denied Plaintiff medical attention for the injuries he sustained during his arrest, namely, treatment for his swollen wrist and swollen eye. This Court will rely upon the Fourteenth Amendment in analyzing Plaintiff's denial of medical care claim. *See Jennings v. Fetterman*, 197 F. App'x 162, 165 (3d Cir. 2006) (recognizing that "an arrestee in the custody of government officials, ... [is] required to be given medical care for his wounds"). *See also City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 243–45 (1983) (holding that the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, controls the issue of whether prison officials must provide medical care to those confined in jail awaiting trial); *Jackson v. City of Philadelphia*, Case Nos. 12–2986, 12–3187, 2013 WL 363463, *3 (3d Cir. Jan. 31, 2013) (slip copy); *Hubbard v. Taylor* ("*Hubbard I*"), 399 F.3d 150, 158 (3d Cir. 2005). *But see Pierce v. Cherry Hill Tp.*, No. 09-6487, 2013 WL 3283952, *10-11 (D.N.J. Jun. 26, 2013) (applying Fourth Amendment "objective reasonableness" standard in a denial of medical care claim asserted by an arrestee). Thus, as explained by the Supreme Court in *Bell v. Wolfish*, in assessing the denial of medical care to a detainee, the inquiry is whether the denial was "imposed for the purpose of punishment or whether it [was] but an incident of some other legitimate governmental purpose." 441 U.S. 520, 538 (1979); *King v. County of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008).

The Fourteenth Amendment standard of unconstitutional punishment, like the Eighth Amendment's cruel and unusual punishment standard, contains both an objective component and a subjective component:

> Unconstitutional punishment typically includes both objective and subjective components. As the Supreme Court explained in *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 ... (1991), the objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id*. at 298 .... The Supreme Court did not abandon this bipartite analysis in *Bell*, but rather allowed for an inference of *mens rea* where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective.

*Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).

In this case, Plaintiff alleges that he was denied medical treatment for injuries to his wrist and face, in particular, a swollen eye. He claims that he requested to be taken to the hospital, but that request was denied. However, the Complaint admits that First Aid personnel were there to attend to Plaintiff's injuries and that they provided him with an ice pack for his swollen wrist and eye. Moreover, Plaintiff does not allege that his injuries were more than contusions that required hospital treatment, *i.e.*, such as a fractured wrist or a concussion. Consequently, there is nothing in this Complaint to suggest that the minimal treatment provided to Plaintiff in this instance, and the denial of further treatment, rose to the level of a constitutional deprivation. At most, Plaintiff's allegations evince his dissatisfaction with his medical treatment and not a deliberate plan by Defendants to punish Plaintiff as required under *Bell*.[1]

---

[1]   This Court further notes that Plaintiff's allegations concerning the failure of Defendants to place him in a dry cell, pump his stomach, or otherwise take him to the hospital for treatment of a possible drug overdose do not serve to elevate this claim to the level of a constitutional deprivation. Plaintiff admits that he had not taken any drugs. He merely alleges that Defendants thought Plaintiff may have consumed a controlled dangerous substance, but provides no factual support for this purported assumption.

10

Therefore, this Court will dismiss without prejudice Plaintiff's denial of medical care claim for failure to state a cognizable claim at this time.  This dismissal is without prejudice to Plaintiff filing an amended Complaint to cure the deficiencies of this action as noted herein.[2]

C.  Claims Against the Borough, Mayor and Police Chief

Finally, Plaintiff brings this action against Defendants, Borough of Bradley Beach, Mayor Schreck and Police Chief Guida, alleging that these Defendants failed to train, supervise and discipline their police officers with regard to the use of force and provision of medical attention for arrestees like Plaintiff.  Plaintiff contends that by unlawful policies, customs, practices and inadequate training, these Defendants are vicariously liable for the wrongful actions of the individual defendant police officers who purportedly used excessive force in their arrest of Plaintiff.  In short, Plaintiff seeks to hold these Defendants liable under a theory of supervisory liability and/or municipal liability.

Generally, a local government unit or supervisory officials are not liable pursuant to 42 U.S.C. § 1983, solely based on a theory of *respondeat superior*.  *See Monell v. New York City Department of Social Services*, 436 U.S. 658, 690–91, 694 (1978).  Rather, municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" of complaint.  *Id. See also Connick v. Thompson*, --- U.S. ----, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) (A § 1983 claim against a municipality can only be successful if

---

[2]    Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed.1990)(footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.

plaintiff can prove that "'action pursuant to official municipal policy' caused [his] injury.");
*Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (reaffirming that a municipality
may not be held vicariously liable for constitutional violations under § 1983, unless plaintiff can
show that the inflicted injury was permitted under the municipality's adopted policy or custom);
*Almodovar v. City of Philadelphia*, --- F. App'x ----, 2013 WL 2631536, *2 (3d Cir. Jun. 13,
2013).

A municipal policy generally is a "statement, ordinance, regulation, or decision officially
adopted and promulgated by" the municipality's official. *Monell*, 436 U.S. at 690.  A municipal
custom is one that, "[a]though not authorized by law," is "so permanent and well settled as to
constitute a 'custom or usage' with the force of law." *Id.* at 691. *See also Connick*, 131 S.Ct. at
1359 ("Official municipal policy includes the decisions of a government's lawmakers, the acts of
its policymaking officials, and practices so persistent and widespread as to practically have the
force of law.").  Thus, for Plaintiff to sufficiently allege municipal liability under § 1983, he
must plead a policy or custom of Bradley Beach Borough that led to the alleged use of excessive
force and denial of medical care by its police officers.

To bring a claim of failure to train under § 1983, as asserted here, Plaintiff must "(1)
identify the deficiency in training; (2) prove that the deficiency caused the alleged constitutional
violation; and (3) prove that the failure to remedy the deficiency constituted deliberate
indifference on the part of the municipality." *Lapella v. City of Atlantic City*, No. 08-4249, 2012
WL 2952411, *6 (D.N.J. Jul. 18, 2012) (citations omitted).  Plaintiff must identify a specific
deficiency, not simply general laxness or ineffectiveness of training.  There also must be an
affirmative link between the alleged inadequacies of the training and the constitutional violation
at issue. *Id.*, 2012 WL 2952411 at *7.

12

Further, when the policy involves an alleged failure to train subordinate officers, liability will lie only where a constitutional violation results from deliberate indifference to the constitutional rights of individuals with whom the officer comes into contact. *Blakely v. City of Pittsburgh Police Dept.*, 449 F. App'x 135, 137-38 (3d Cir. 2011) (citing *Grazier v. City of Philadelphia*, 328 F.3d 120, 124 (3d Cir. 2003)); *Woloszyn v. County of Lawrence*, 396 F.3d 314, 324 (3d Cir. 2005). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 131 S.Ct. at 1360 (quoting *Board of County Com'rs of Bryan County, Okl. V. Brown*, 520 U.S. 397, 409 (1997)); *see also Brown v. Muhlenberg Tp.*, 269 F.3d 205, 215 (3d Cir. 2001) ("A municipality's failure to train its police officers can subject it to liability, however, 'only where [it] reflects a 'deliberate' or 'conscious' choice by [the] municipality.'" (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989); *Cluver v. Borough of Sayreville*, No. 10-3173 (MAS), 2013 WL 394030, *12 (D.N.J. Jan. 30, 2013). Thus, "in order to meet the deliberate indifference standard for directly subjecting a municipality to section 1983 liability, [Plaintiff] must present scienter-like evidence of indifference on the part of a particular policymaker or policymakers." *Simmons v. City of Phila.*, 947 F.2d 1042, 1060-61 (3d Cir. 1991). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 131 S.Ct. at 1360.

The Supreme Court has noted that a plaintiff's claim is at its most "tenuous" when it "turns on [an allegation of] a failure to train." *Connick*, 131 S.Ct. at 1359. For instance, a municipality's deliberate indifference failure to train is *not* established by: "(1) presenting evidence of the shortcomings of an individual; (2) proving that an otherwise sound training

13

program occasionally was negligently administered; or (3) showing, without more, that better

training would have enabled an officer to avoid the injury-causing conduct." *Simmons*, 947 F.2d

at 1060.  Rather, a plaintiff must identify specific training or policies that would prevent the

harm and show that the failure to provide such training "can reasonably be attributed to a

deliberate indifference ...." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 325 (3d Cir. 2005)

(quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1029–30 (3d Cir. 1991)).

Usually, one incident is not sufficient to establish a custom that can give rise to municipal

liability." *Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995).  Instead,

plaintiff needs to show that responsible officials, such as Chief Guida or Mayor Schreck, were

aware of a number of similar constitutional violations by the Bradley Beach police officers and

knew of ways to prevent them, but "'either deliberately chose not to pursue these alternatives or

acquiesced in a longstanding policy or custom of inaction in this regard.'" *Antoine ex rel.*

*Antoine v. Rucker*, No. 03-3738 (DRD), 2006 WL 1966649, *12 (quoting *Simmons*, 947 F.2d at

1064).

Here, the allegations against the Borough of Bradley Beach constitute only a "formulaic

recitation of the elements of a [municipal liability] claim," *Iqbal*, 556 U.S. at 681 (internal

quotation marks omitted).  Plaintiff generally alleges that the "Borough of Bradley Beach has a

history of widespread abuse imputed to supervisory and personnel prior misbehavior," and that

"Borough Policy Makers [have] implemented practices, procedures, policies, rules, regulations,

standards, ordinances, customs and or usages" that are "so permanent and well settled" as to be

the "moving force behind the constitutional violations or torts."[3]  (*Id.*, ¶ 8.)   However, Plaintiff

---

[3]  The Court observes that Plaintiff's allegations against the supervisory and municipal
Defendants track almost verbatim the Third Circuit's language in *Andrews v. City of*

14

alleges no facts in support of these legal conclusions. He cites no prior incident or incidents to support the bald allegation of "widespread abuse," and Plaintiff fails to allege any facts to support his naked assertion of an unlawful municipal policy or custom. He also does not identify any ordinance, regulation or official decision adopted and promulgated by Bradley Borough regarding the use of force during arrests or the provision of medical care for injured arrestees. Rather, he only states, in a conclusory manner, that "Borough Policy Makers [have] implemented practices, procedures, policies, rules, regulations, standards, ordinances, customs and/or usages" that are "so permanent and well settled" as to be "the moving force behind the constitutional torts." (Compl., ¶ 8.)

Next, to the extent that Plaintiff is asserting failure to train, he does not identify any facts detailing specific deficiencies in any training programs. Plaintiff merely alleges a failure to discipline police officers for other instances of police brutality, which he does not identify. Indeed, the Complaint alleges no facts concerning prior instances of police using excessive force during arrest, and thereafter denying medical treatment to arrestees for any injuries sustained that would support a claim of deliberate indifference based on a pattern of constitutional violations of which the Borough had notice. Instead, the Complaint appears to allege an "atmosphere" of indifference to the rights of "civilians." (Compl., ¶ 5.) "[M]erely alleging a 'custom of

---

*Philadelphia*, 895 F.2d 1469, 1480 (3d Cir.1990). For instance, in discussing the ways that a policy or custom may be established, the Third Circuit said:

> Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law. In either of these cases, it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom.

*Id.* (internal citations omitted). *See also Monell*, 436 U.S. at 690; *Mulholland*, 706 F.3d at 237.

indifference' is no less conclusory than alleging a 'custom' itself." *Lapella*, 2012 WL 2952411 at *8.

Therefore, because Plaintiff fails to allege any factual basis to support his conclusory statement of municipal liability, the Complaint will be dismissed without prejudice as against the Borough of Bradley Beach for failure to state a claim for liability under § 1983 at this time.

Similarly, to establish supervisory liability as to the individual Defendants, Mayor Schreck and Chief Guida, Plaintiff "must prove that the alleged tortfeasor was 'directed to violate' [Plaintiff's] constitutional rights by his superiors." *Cluver*, 2013 WL 394030 at *11 (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This can be demonstrated by showing that the "supervisor gave directions that the supervisor 'knew or should reasonably have known would cause others to deprive the plaintiff of [his] constitutional rights.'" *Cluver*, *supra* (quoting *Santiago*, *supra*). Significantly, "any claim that supervisors directed others to violate constitutional rights necessarily includes as an element an actual violation at the hands of subordinates." *Santiago*, *supra*. Supervisor liability also may be established "by showing a supervisor tolerated past or ongoing behavior" or failed "to train, supervise, and discipline subordinates." *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 72 (3d Cir. 2011).

Thus, in order to prevail on a failure to train, discipline or control claim, a plaintiff must "show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents" and "circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Drake v. Andruczyk*, No. 08-4249, 2011 WL 1402158, *6  (D.N.J. Apr. 13, 2011) (quoting *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998)).

In this case, Plaintiff again alleges only conclusory statements of supervisory liability with respect to the individual Defendants, Schreck and Guida. Namely, Plaintiff alleges that Defendants Schreck and Guida failed "to train or supervise or discipline the police officers under their command," and that by failing to discipline police officers for other instances of police brutality, these Defendants "condone, tolerate and acquiesce in these constitutional deprivations." (Compl., ¶¶ 5, 7.) The Complaint fails to allege any facts regarding any particular instance where the supervisory Defendants failed to discipline police officers for prior misbehavior that would suggest a pattern of abuse or deliberate indifference. He relies simply on the incident at issue in this litigation to support his general assertion of supervisor liability. Plaintiff also does not identify any specific practice, procedure, policy, rule, regulation or ordinance implemented by the supervisory Defendants, which purportedly generated the alleged widespread abuse and misbehavior.

The Complaint also fails to allege any facts regarding the conduct, direction, knowledge or acquiescence of the supervisory Defendants with respect to the alleged use of excessive force against Plaintiff. For instance, Plaintiff does not allege that the supervisory Defendants were present during the incident, directed the alleged incident, or even knew of the incident at the time. There are simply no allegations of fact that would support a plausible inference that the supervisory Defendants knew of the level of force used against Plaintiff. *See McKenna v. City of Philadelphia*, 582 F.3d 447, 460 (3d Cir. 2009) (holding that a supervisor's presence "in the vicinity of the arrest at some point after [plaintiff] is handcuffed ... is not a legally sufficient evidentiary basis" to find knowledge and acquiescence).

For these reasons, the Court finds that Plaintiff has failed to state a claim of liability under § 1983 against the supervisory Defendants, Schreck and Guida, in their individual

capacities.  Therefore, the Complaint will be dismissed without prejudice, in its entirety, as against these supervisory Defendants.  The dismissal of the Complaint as against Defendants Borough of Bradley Beach, Mayor Schreck and Chief Guida, is without prejudice to Plaintiff filing an amended Complaint, with leave of Court, to cure the deficiencies discussed above.

### V. CONCLUSION

For the reasons set forth above, Plaintiff's claim alleging use of excessive force in violation of his Fourth Amendment rights will be allowed to proceed at this time as against Defendants Poblete, Murray, Browning, Early, Fahnholtz, Ricciardi, Gale and the unnamed Bradley Beach police officers who participated in the alleged misconduct.  However, Plaintiff's denial of medical care claim will be dismissed without prejudice, as against all named defendants, including the Bradley Beach First Aid and its employees, Maureen McCaltery and Jane Doe, for failure to state a claim at this time.  Likewise, the Complaint will be dismissed without prejudice as against the Borough of Bradley Beach and the supervisory Defendants, Mayor Schreck and Chief Guida, for failure to state a claim at this time.  An appropriate order follows.

MICHAEL A. SHIPP
United States District Judge

Dated: 8/14/13

18